UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
    Plaintiff,               )
                             )
v.                           )    No. 4:24-CR-619 AGF
                             )
GEORGE S. PACE,              )
                             )
    Defendant.               )

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

## 1. PARTIES:

The parties are the defendant George S. Pace, represented by defense counsel Kevin Curran, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

## 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1-4 of the charge, the United States agrees to dismiss Counts 5 and 6 and further agrees that no further federal prosecution will be brought in this District relative to the defendant's scheme to defraud victim CF and scheme to obtain fraudulent SBA

1

Disaster Loans during the time frame alleged in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts 1-4, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: a forfeiture money judgment in the amount of $123,015.94.

## 3. ELEMENTS:

As to Counts 1-4, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, the defendant voluntarily and intentionally devised or made up a scheme to obtain money by means of material false representations or promises;

Two, the defendant did so with the intent to defraud;

Three, the defendant used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme.

## 4. FACTS:

2

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Defendant GEORGE S. PACE ("Pace") was a resident of St. Louis, Missouri. Beginning in 2020, Pace served on the Board of Directors of a non-profit circus, "CF," based in St. Louis, Missouri, in the Eastern District of Missouri. Pace subsequently became the President of the Board of Directors, a position in which Pace had substantial discretion over the finances of CF.

In addition to providing circus performances to the community, CF also does extensive community outreach, including by offer free tickets to underserved communities, and performing for hospitalized children and their families. A substantial source of CF's funding comes from donations. Although CF had both a treasurer and an accountant, as President of the Board of Directors, Pace was given a significant degree of autonomy and access to CF's finances. Beginning in 2022, CF maintained a $150,000 line of credit at Enterprise Bank and Trust ("Enterprise Bank"). The line of credit was intended to provide operating cash flow to CF after it experienced a cash flow crunch in the wake of the COVID pandemic.

CF also had two credit cards issued by Enterprise Bank, one of which was held by CF's Executive Director, KP, and one of which was held by CF's Artistic Director, JM. At no point in time was Pace an authorized cardholder for CF's Enterprise Bank credit cards, nor was he permitted to use the credit cards for personal expenses. Defendant maintains that he was an authorized cardholder, but acknowledges his misuse of the credit card, as described below. In February of 2023, JM directed Pace to close the credit cards at Enterprise Bank, and to obtain a credit card through UMB Bank. Pace maintained personal checking account #3215 and personal savings accounts #3231 at Bank of America. Deposits into Bank of America accounts from

3

accounts held at other financial institutions were accomplished by means of interstate wire transmission.

Beginning no later than in or around December 2022, and continuing until through at least in or around September 2023, in the Eastern District of Missouri and elsewhere, with intent to defraud, Pace devised and intended to devise a scheme and artifice to defraud CF, and to obtain money and property from CF, by means of materially false and fraudulent pretenses, representations, and promises.

Without the knowledge or approval of CF, Pace obtained an Enterprise Bank credit card held in his name but opened on CF's account. Pace falsely represented to CF that he had closed CF's credit cards at Enterprise Bank. In truth and fact, Pace closed the cards held in the names of CF's Artistic Director and the Executive Director, but, without CF's knowledge or approval, maintained his own CF Enterprise Bank credit card. Pace used his CF Enterprise Bank credit card to pay for thousands of dollars of personal expenses, including payments to nail salons, restaurants, and for skin care treatments.

Pace obtained a UMB Bank credit card held in his name, but opened on the account of CF. CF had not authorized Pace to use this credit card for personal expenses. As with the Enterprise Bank credit card, Pace used the UMB credit card to make thousands of dollars in unauthorized personal purchases, including horseback riding related expenses and payments to restaurants. Pace met with JM, CF's Artistic Director, each month to review his credit card expenses. In March 2023, Pace falsely told JM that his UMB credit card had been stolen, and that event accounted for the unauthorized purchases made using Pace's UMB credit card.

Pace provided JM with forged account statements showing that Pace had resolved the fraudulent charges, when in truth and fact, he had not. Pace diverted over $50,000 in checks drawn

4

on CF's Enterprise Bank account to himself, rather than using them to pay down CF's line of credit at Enterprise, as Pace falsely informed CF's Board of Directors he was doing. Pace agrees that he diverted checks to himself, but disputes the total amount of the diverted checks. Pace's diversion of the line of credit payments caused thousands of dollars in interest to be accrued by CF. Pace deposited thousands of dollars of donor checks made out to CF into his personal Bank of America accounts. Over the course of the scheme, Pace used the CF's Enterprise Bank line of credit, company credit cards and donor checks to defraud CF of over $123,015.94.

As part of the scheme, in the Eastern District of Missouri, Pace deposited into his personal bank account(s) the following CF donor checks drawn on financial institutions maintaining servers located outside the state of Missouri, as follows:

| Count | Deposit Date | Amount | Check Memo |
|---|---|---|---|
| 1 | 12/15/2022 | $250.00 | "2022 Donation" |
| 2 | 1/3/2023 | $500.00 | "Donation" |
| 3 | 2/23/2023 | $150.00 | "Donation" |
| 4 | 5/8/2023 | $250.00 | "CF 2023 Donation" |

## SBA DISASTER LOAN FRAUD

In or about August 2022, Pace also engaged in a scheme to obtain fraudulent Small Business Administration ("SBA") Disaster Assistance loans by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing his scheme, caused the transmission of interstate wire transmissions. Pace attempted to obtain two SBA loans, one in the amount of $18,200, and one in the amount of $11,200, by submitting applications that falsely represented his assets and income. The SBA declined the loan applications, but Pace agrees that the amount of intended loss associated with these fraudulent applications is $29,400.

## 5. STATUTORY PENALTIES:

5

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES (2025 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The intended loss associated with the offenses of conviction is more than $150,000, resulting in an offense level increase of 10. U.S.S.G. § 2B1.1(b)(1).

The government's position is that the offense involved a misrepresentation that the defendant was acting on behalf of a charitable organization, resulting in an offense level increase of 2. U.S.S.G. § 2B1.1(b)(9). The defendant disputes the application of this specific offense characteristic.

The offense resulted in substantial financial hardship to one or more victims, resulting in an offense level increase of 2. U.S.S.G. § 2B1.1(b)(2)(A)(iii). The defendant disputes the application of this specific offense characteristic.

6

b. **Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments:** The parties agree that the following additional adjustments apply: The offense involved an abuse of a position of trust, resulting in a 2 level offense increase. U.S.S.G. § 3B1.3. The parties have no other agreements as to applicable Sentencing Guidelines adjustments.

d. **Estimated Total Offense Level:** The government estimates that the Total Offense Level is 20. The defendant estimates that the Total Offense Level is 16.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

7

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties disagree as to the application of a 2 level enhancement pursuant to U.S.S.G. § 2B1.1(b)(9) and the application of the 2 level enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(iii) and will litigate those issues at sentencing. The parties agree to abide by the Court's determination of that issue and specifically waive their rights to appeal the Court's ruling resulting in the calculation of the Total Offense Level. In the event the Court accepts the plea, and after determining the Total Offense Level, sentences the defendant within or below that corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives

8

all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and, after determining the Total Offense Level, sentences the defendant within or above that corresponding range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.    These conditions will be restrictions on the defendant to which the

9

defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such

10

items in the United States. The defendant agrees to abandon his or her interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $123,015.94. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to

11

require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

12

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case.  In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea.  The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement.  The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

13

_____
Date

_____
Gwendolyn E. Carroll
Assistant United States Attorney

_____
Date

_____
George S. Pace
Defendant

_____
Date

_____
Kevin Curran
Attorney for Defendant

1/28/26

_____
Eric Selig
Attorney for Defendant

14